Gregory D. Brown, State Bar No. 065318
John J. Verber, State Bar No. 139917
James Y. Higa, State Bar No. 225683
BURNHAM BROWN
A Professional Law Corporation
P. O. Box 119
Oakland, California 94604
---
1901 Harrison Street, 11th Floor
Oakland, California 94612
Telephone:    (510) 444-6800
Facsimile:    (510) 835-6666
Email:    gbrown@burnhambrown.com
          jverber@burnhambrown.com
          jhiga@burnhambrown.com

Attorneys for Defendant
EDWARD POULSON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF JERRY A. AMARO III; GERALDINE MONTOYA; STEPHANIE MONTOYA,<br><br>             Plaintiffs,<br><br>v.<br><br>CITY OF OAKLAND, RICHARD WORD; EDWARD POULSON; R. HOLMGREN; S. NOWAK; M. BATTLE; E. KARSSEBOOM; C. BUNN; M. PATTERSON; individually, and in their capacities as members of the CITY OF OAKLAND POLICE DEPARTMENT; and DOES 1-100, inclusive,<br><br>             Defendants. | Case No. C09-01019 WHA<br><br>**DEFENDANT EDWARD POULSON'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF HIS REPLY TO PLAINTIFFS' OPPOSITION TO HIS MOTION TO DISMISS UNDER RULE 12(b)(6), OR IN THE ALTERNATIVE, UNDER RULE 12(b)(1)**<br><br>Date:    June 4, 2009<br>Time:    8:00 a.m.<br>Place:   Courtroom 9<br>Judge:   Hon. William Alsup<br><br>Complaint Filed:  March 10, 2009 |

## I.    INTRODUCTION

Defendant EDWARD POULSON's ("Defendant") Motion to Dismiss Under Rule

12(b)(6), or, in the alternative, under Rule 12(b)(1) should be granted because the accrual of

Plaintiffs' THE ESTATE OF JERRY A. AMARO III; GERALDINE MONTOYA;

STEPHANIE MONTOYA ("Plaintiffs") claim occurred over nine years ago—eight years

1

1    beyond the applicable statute of limitations.

2    In their Opposition to the Motion, Plaintiffs erroneously attempt to posit an alleged

3    conspiracy by Defendant and others, as detailed in recent media reports based upon information

4    from unnamed sources and unidentified documents, as the linchpin event underlying the case at

5    bar.  However, prevailing authority supports Defendant's position that the injury which "started

6    the clock" on Plaintiffs' claim was Decedent JERRY AMARO's ("Amaro") date of arrest, which

7    occurred on March 23, 2000—not the revelation of some purported conspiracy occurring after

8    (and concerning) Amaro's passing.  In fact, Plaintiffs' filing of a claim with Defendant CITY OF

9    OAKLAND ("City") on September 15, 2000, seeking redress for Amaro's death, manifestly

10   demonstrates Plaintiffs' understanding of the legal import of Amaro's arrest and later death for

11   statute of limitations purposes.  Plaintiffs cannot now, nine years later, attempt to cure their

12   failure to timely file suit by misinterpreting the applicable authority to represent that the linchpin

13   event underlying this case was not the actual occurrence of Amaro's death, but rather the

14   revelation of some hypothetical conspiracy.

15                               **II.    ARGUMENT**

16   Plaintiffs do not dispute the authority of the Court to consider Defendant's Motion

17   raising a statute of limitations defense pursuant to Fed. R. Civ. Proc. Rule 12(b)(6), on the

18   ground that Plaintiffs' complaint fails to state a claim on which relief can be granted.  See

19   Johnson v. Riverside Healthcare System, 534 F.3d 1116, 1121 (9th Cir. 2008).  Further, because

20   Plaintiffs bring their case under a 42 U.S.C. § 1983 theory of action, they appear to (and must)

21   concede the overwhelming authority applying California's one-year statute of limitations for

22   personal injury actions to the instant Section 1983 claim.  See Lukovsky v. City and County of

23   San Francisco, 535 F.3d 1044, 1048 (9th Cir. 2009); Azer v. Connell, 306 F.3d 930, 935-36 (9th

24   Cir. 2002); Morales v. City of Los Angeles, 214 F.3d 1151, 1153 (9th Cir. 2000).  Federal law

25   governs when a civil rights claim accrues.  TwoRivers v. Lewis, 174 F.3d 987, 991-92 (9th  Cir.

26   1999), citing West v. Conrail, 481 U.S. 35, 39-40 (1987).

27   Given the above authority and the following argument, Defendant respectfully submits

28   the Court must find: (1) that the actual injury which began the statutory period occurred *in 2000*;

1   (2) that Plaintiffs knew of the actual injury when it occurred *and acted upon it* by filing a claim

2   with the City *in 2000*, and (3) that the later theorization of an alleged conspiracy is wholly

3   irrelevant to the accrual of Plaintiffs' right, which occurred *in 2000*. Plaintiffs' attempt to

4   subvert the facts and posit an alternate date of accrual by redefining the operative "injury" (i.e.

5   the alleged conspiracy) cannot be rewarded with a second chance to file a case they simply

6   neglected and allowed to wither at the government claims stage nine years ago.

7
        A.    **Amaro's Arrest and/or Subsequent Passing is the Operative "Injury" Upon**
8             **Which this Case Must Be Based, Not the Occurrence of Some Purported**
              **Conspiracy Disclosed Years Later.**
9

10          Prevailing authority supports Defendant's position that a legally cognizable claim

11  accrues upon awareness of an actual injury, not when the plaintiff suspects a legal wrong. See

12  Lukovsky, 535 F.3d at 1049. Under federal law, it is well settled that a claim accrues when the

13  plaintiff knows or has reason to know of the injury which is the basis of the action. Id. at 1048.

14  See also Morales, 214 F.3d at 1154; Azer, 306 F.3d at 937; see also McCoy v. San Francisco

15  City & County, 14 F.3d 28, 29 (1994).

16          In their Opposition to this Motion, Plaintiffs contend recent media reports demonstrate an

17  alleged conspiracy or cover-up by Defendant and other parties which occurred immediately after

18  Amaro's arrest and subsequent passing in 2000. Specifically, such reports, based substantially

19  on unnamed sources and unidentified documents, hypothesize Defendant and others conspired to

20  interfere in the homicide and internal affairs investigations into the circumstances of Amaro's

21  arrest and death. Plaintiffs further allege what they term the "true facts" of this purported

22  conspiracy were unknown to them within the statutory period and thus prevented them from

23  timely filing suit. Therefore, it appears Plaintiffs' position is the alleged conspiracy—

24  Defendant's purported fraudulent concealment of these "true facts"—is what constitutes the

25  actual injury to Amaro (and to Plaintiffs) forming the basis for the case at bar. Accordingly,

26  Plaintiffs seek the protection of the equitable estoppel doctrine to preserve their right to bring

27  this untimely, conspiracy-based claim.

28          However, Plaintiffs manifestly misapprehend the simple fact their claim accrued *at the*

DEF EDWARD POULSON'S MEMO OF PTS & AUTHORITIES ISO REPLY TO PLS.' OPP. TO          No. C09-01019 WHA
HIS MOT. TO DISMISS PURSUANT TO RULE 12(b)(6)

1   *time Amaro's actual legal injury—his arrest and/or subsequent passing—occurred,* NOT at

2   some later point when an ostensible conspiracy to cover-up the circumstances of Amaro's legal

3   injury took place.  Simply stated, Plaintiffs knew an actual and legally cognizable injury had

4   occurred no later than upon Amaro's untimely passing.  In fact, Plaintiffs' awareness of Amaro's

5   legal injury resulted in the filing of their subsequent claim with the City just 5 months after his

6   death.  Plaintiffs' timely filing of their governmental claim in 2000 belies the disingenuity of

7   their current position that they were unaware legal significance of Amaro's death.

8          Where the awareness of an actual injury determines the accrual of a federal cause of

9   action and not the suspicion of a legal wrong, Plaintiffs' position erroneously transposes the two.

10  See Lukovsky, 535 F.3d at 1049.  Plaintiffs' recent understanding of an alleged conspiracy may

11  give rise to suspicion of a legal wrong, but Plaintiffs were clearly aware of Amaro's actual injury

12  years earlier.  Plaintiffs cannot now, nine years later, attempt to cure their failure to timely file

13  suit by misinterpreting the applicable authority to hypothesize that the operative "injury" was not

14  the actual occurrence of Amaro's arrest and later death, but rather the revelation of this

15  purported conspiracy.

## B.    Equitable Estoppel Does Not Apply Where Plaintiffs Always Had Knowledge of the Injury and Where Defendant Did Not Prevent the Filing of Suit.

18         Equitable estoppel, also termed fraudulent concealment, halts the statute of limitations

19  when there is active conduct by a defendant, above and beyond the wrongdoing upon which

20  plaintiff's claim is filed, to prevent the plaintiff from suing in time.  Guerrero v. Gates, 442 F.3d

21  697, 706 (9th Cir. 2006); see also Lukovsky, 535 F.3d at 1052.  California's equitable tolling

22  principles apply to the extent they are not inconsistent with federal law.  See Azer, 306 F.3d at

23  936.  California equitable estoppel is similar to and not inconsistent with federal common law as

24  both focus on actions taken by the defendant *which prevent the plaintiff from filing on time.*  See

25  Lukovsky, 535 F.3d at 1052.

26         Plaintiffs can present no facts supporting the conclusion Defendant took actions

27  preventing the timely filing of suit nine years ago.  As argued above, the actual injury in this

28  case is Amaro's arrest and death, not the occurrence of some unsubstantiated conspiracy.  As

DEF EDWARD POULSON'S MEMO OF PTS & AUTHORITIES ISO REPLY TO PLS.' OPP. TO          No. C09-01019 WHA
HIS MOT. TO DISMISS PURSUANT TO RULE 12(b)(6)

1    such, Defendant did absolutely nothing to prevent Plaintiffs from filing suit based upon Amaro's

2    arrest in death in 2000 within the statutory period, just as Defendant did nothing to prevent

3    Plaintiffs from managing to file their governmental claim with Defendant City of Oakland based

4    upon the exact same injury.  Consequently, Plaintiffs are further incapable of providing evidence

5    they were ignorant of Amaro's actual injury (i.e. his arrest/death) or that they relied on any

6    conduct by Defendant which prevented their filing of suit after the denial of their governmental

7    claim *based upon that actual injury.*  See Id. at 1051-52 (discussion of elements of equitable

8    estoppel under California law).

9         Plaintiffs cite Conmar Corp. v. Mitsui & Co., Inc. 858 F.2d 499 (9th Cir. 1988) to support

10   their position equitable estoppel is appropriate in the instant case.  In Conmar, plaintiff concrete

11   contractors filed suit against an importer of post-tension concrete, alleging various anti-

12   competitive acts which ultimately resulted in a criminal prosecution of, and plea by, the

13   defendant corporation.  Conmar, 858 F.2d 500-02.  There, the Ninth Circuit reversed a district

14   court grant of summary judgment, stating a question of material fact remained regarding how

15   much information was available to the plaintiffs to make them aware an injury had occurred and

16   whether the defendants fraudulently concealed such information.  Id. at 505-06.  However, the

17   instant case is distinguishable on the simple ground Plaintiffs had actual notice of Amaro's

18   injury—his arrest/death—immediately upon its occurrence back in March/April 2000.  In fact,

19   once again, Plaintiffs acted on that information by filing a governmental claim with the City as a

20   precursor to civil suit.  It was simply their decision to allow their right to sue to lapse after denial

21   of the governmental claim.

22        Similarly, Plaintiffs other cited authorities on the issue of equitable estoppel, both federal

23   and state, are factually distinguishable because those plaintiffs either lacked awareness of any

24   actual injury or lacked awareness of the perpetrator of the actual injury until the statutory period

25   had lapsed.  See In re Beef Industry Antitrust Litigation, 600 F.2d 1148 (5th Cir. 1979)(Plaintiff

26   cattlemen, ranchers and feeders were unaware of a price-fixing conspiracy by retailers until

27   some time after the conspiracy took place); Bernson v. Browning-Ferris, 7 Cal.4th 926

28   (1994)(Plaintiff knew of libelous statements made against him but was not aware of the author

1    until after the statutory period).  Here, Plaintiffs knew within the statutory period *both* that an

2    actual injury had occurred and who had perpetrated the alleged injury.

3         Unable to prove Defendant concealed facts regarding Amaro's actual injury or prevented

4    Plaintiffs' from timely filing thereupon, Plaintiffs only recourse is the attempt to disingenuously

5    substitute Amaro's actual injury with the hypothesis of some alleged conspiracy in order to

6    resuscitate their equitable estoppel position.  This must fail.

7                          **III.    CONCLUSION**

8         Based upon the foregoing, and based upon the points and authorities and materials filed

9    previously, Defendant respectfully requests that this Motion under Rule 12(b)(6), or alternatively

10   under Rule 12(b)(1) be granted, and that Plaintiffs' Complaint be dismissed with prejudice.

11   DATED:  May 21, 2009                    BURNHAM BROWN

12

13

14   By_____
                                            JAMES Y. HIGA
15                                          Attorneys for Defendant
                                            EDWARD POULSON
16   943205

17

18

19

20

21

22

23

24

25

26

27

28

DEF EDWARD POULSON'S MEMO OF PTS & AUTHORITIES ISO REPLY TO PLS.' OPP. TO      No. C09-01019 WHA
HIS MOT. TO DISMISS PURSUANT TO RULE 12(b)(6)